OPINION *Page 2 
{¶ 1} On November 4, 2005, the Licking County Grand Jury indicted appellant, Dexter Lamont Harris, on two counts of sexual battery in violation of R.C. 2907.03(A)(9). On May 26, 2006, the Licking County Grand Jury indicted appellant on two counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A) and (B)(3). All the charges arose from incidents involving appellant and a minor who attended one of his basketball camps. At the time of the incidents, the minor was sleeping over at appellant's house after babysitting his children, although appellant had never left the house because his plans had fallen through. The victim claimed appellant digitally penetrated her and had sexual intercourse with her.
 {¶ 2} A jury trial commenced on June 15, 2006. The jury found appellant guilty of one count of sexual battery and one count of unlawful sexual conduct with a minor. By judgment entry filed July 31, 2006, the trial court sentenced appellant to an aggregate term of three years in prison.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE TRIAL COURT VIOLATED DEXTER HARRIS' RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN, IN THE ABSENCE OF SUFFICIENT EVIDENCE, THE TRIAL COURT FOUND MR. HARRIS GUILTY OF SEXUAL BATTERY. FIFTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION SIXTEEN, ARTICLE I OF THE OHIO CONSTITUTION." *Page 3 
 II {¶ 5} "THE TRIAL COURT ERRED WHEN IT IMPOSED NONMINIMUM (SIC) PRISON TERMS ON MR. HARRIS, A VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION. BLAKELY V. WASHINGTON (2004), 542 U.S. 296;UNITED STATES V. BOOKER (2005), 543 U.S. 220."
 III {¶ 6} "TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION TEN, ARTICLE I OF THE OHIO CONSTITUTION, FOR FAILING TO OBJECT TO THE TRIAL COURT'S IMPOSITION OF NON-MINIMUM SENTENCES."
 IV {¶ 7} "THE TRIAL COURT COMMITTED PLAIN ERROR AND DENIED MR. HARRIS DUE PROCESS OF LAW BY IMPOSING A NON-MINIMUM SENTENCE. FIFTH AND FOURTEEN AMENDMENTS TO THE UNITED STATES CONSTITUTION; SECTION SIXTEEN, ARTICLE I
OF THE OHIO CONSTITUTION." V {¶ 8} "TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION TEN, ARTICLE I OF THE OHIO CONSTITUTION, FOR FAILING TO PROPERLY IMPEACH THE STATE'S METHOD OF DNA TESTING." *Page 4 
 I {¶ 9} Appellant claims the evidence was insufficient to convict him of sexual battery. We disagree.
 {¶ 10} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks at paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307.
 {¶ 11} Appellant was convicted of sexual battery in violation of R.C.2907.03(A)(9) which states the following:
 {¶ 12} "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
 {¶ 13} "(9) The other person is a minor, and the offender is the other person's athletic or other type of coach, is the other person's instructor, is the leader of a scouting troop of which the other person is a member, or is a person with temporary or occasional disciplinary control over the other person."
 {¶ 14} Appellant claims there was insufficient evidence to establish he was the "coach" or "instructor" of the alleged victim. The jury was specifically instructed on appellant "being her [the victim's] athletic or other type of coach or instructor." T. at 488.
 {¶ 15} The victim testified appellant was her basketball coach through private camps and boot camps. T. at 70-71. The camps were utilized as training for the high school sponsored basketball team. T. at 71. The victim's mother testified appellant *Page 5 
discounted a camp session because the victim was going to baby-sit his children. T. at 276.
 {¶ 16} Appellant described his work as "doing personal training with basketball." T. at 409. He explained he recruited kids for basketball, he evaluated them, motivated them, and worked with them to improve their skills. Id. Appellant acknowledged he recruited the victim's team to attend his basketball camp. T. at 412. He also recruited the victim through her parents, and gave them a discounted rate. T. at 413-414. The victim came to the boot camp one day, but because she was physically exhausted, she did not even "put ten minutes in." T. at 415.
 {¶ 17} The jury was given two different perspectives on the issue of "coaching," and chose to believe the interpretation of the victim and her mother. Appellant's actions of recruiting the victim, discounting the fee, and actually attempting to work out with the victim support the fact that appellant was her coach.
 {¶ 18} Upon review, we find sufficient evidence, if believed, to support the guilty verdict on the offense of sexual battery.
 {¶ 19} Assignment of Error I is denied.
 II, III, IV {¶ 20} These assignments challenge his sentence. Specifically, appellant claims the trial court erred in imposing a non-minimum prison term, defense counsel was ineffective for failing to object to the sentence, and the trial court committed plain error in sentencing him. We disagree.
 {¶ 21} Appellant claims Ohio's sentencing scheme remains unconstitutional despite the holding in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, as the *Page 6 
application of Foster violates appellant's rights under the due process and ex post facto clauses of the United States and Ohio Constitutions.
 {¶ 22} In State v. Paynter, Muskingum App. No. CT2006-0034,2006-Ohio-5542, Assignment of Error II, this court reviewed the same issues herein and found they lacked merit. We concur with the comprehensive analysis of this well written opinion and deny these assignments of error.
 {¶ 23} Assignments of Error II, III, and IV are denied.
 V {¶ 24} Appellant claims his trial counsel was ineffective in failing to impeach the Y-STR testing which detects the Y-chromosome DNA specific to men. We disagree.
 {¶ 25} The standard this issue must be measured against is set out inState v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Appellant must establish the following:
 {¶ 26} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v.Washington [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 {¶ 27} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Page 7 
 {¶ 28} This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." State v. Post (1987), 32 Ohio St.3d 380, 388.
 {¶ 29} Seminal fluid was detected on the victim's panties and rectal swabs. However, no DNA other than the victim's was identified. Therefore, the samples were sent for additional testing, Y-STR testing, which tests for the Y-chromosome DNA specific to men. In State v.Elliot, Hamilton App. No. C-050606, 2006-Ohio-4508, ¶ 7, our brethren from the First District explained the Y-STR test as follows:
 {¶ 30} "`The Y Chromosome is the DNA in the nucleus of a cell that is present only in males.' C.J. Word, The Future of DNA Testing and Law Enforcement (2001), Speech at the Brooklyn Law School Symposium on DNA: Lessons From the Past-Problems For the Future, in 67 Brooklyn L.Rev. (Fall 2001), 249, 251, fn. 5. In 1995, the best available DNA test was unable to detect a male DNA profile on a swab taken from a rape victim if no sperm was visible when the swab was examined microscopically. See P. de Mazancourt, Y-STR as Proof of Rape When Sperm Cells Cannot be Found (2002), Address Before the 13th International Symposium on Human Identification. Current Y-Chromosome Short Tandem Repeat ('Y-STR') analysis now allows the development of DNA profiles where no sperm is detectable microscopically. U.S. Department of Justice (July 2002), Using DNA to Solve Cold Cases, at 5."
 {¶ 31} Appellant argues a Y-STR test would show the same Y-STR profile in every male from the same lineage therefore, defense counsel should have impeached the evidence or more fully argued the inclusion of all of appellant's male relatives. *Page 8 
 {¶ 32} We note appellant's son was present in the home the evening of the incidents. This very well may have been part of defense counsel's trial strategy in not pursuing some of the issues presented by this assignment.
 {¶ 33} Defense counsel was very aggressive during the cross-examination of both the forensic experts for the state, Dwayne Winston and Mark Losko. Defense counsel got "down to the nitty-gritty" and focused on the fact that "YSTR testing is not unique to a — to a single individual." T. at 204. The testing does not exclude paternal relatives such as grandfather/father/son/uncle. T. at 202. Y-Chromosome testing has not progressed yet to a point of certainty or exactness as DNA testing. T. at 208. Foreign DNA was not found on the swabs obtained from the victim or her panties. T. at 228, 262. DNA could not be detected in the seminal fluid found in the samples because the semen did not contain sperm cells. T. at 230. Based on the Y-STR testing of the samples found in the victim's panties, appellant or his paternal relatives could not be excluded as the source. T. at 203.
 {¶ 34} In closing argument, defense counsel emphasized there was no DNA match, and there were limitations to the science of identification:
 {¶ 35} "Well, Dwayne Winston explained to you that traditional DNA testing will give you a single match in — I think he used the number 48 quadrillion. Well, we didn't use traditional DNA testing here because Mr. Losko couldn't identify any male DNA during his test, and Mr. Winston explained it's a very specialized and different type of testing. Now, ultimately, if you recall, Mr. Winston explained that they compared the sample from the panty cutting and the sample from Mr. Harris against a database of 4,004 known samples. They got — obtained one match. It happened to be within the *Page 9 
African American community, but as Mr. Winston explained, that's not overwhelming evidence. It's just what happened.
 {¶ 36} "Mr. Winston also explained that his database consisted of 4,004 randomly submitted samples. Now, the ones that they compared to that produced one hit. Mr. Winston explained that there are more than 4,004 white people in the world; there are more than 4,004 Hispanic people in the world, more than 4,004 Asians, and more than 4,004 African Americans. I'm going to ask you not so much to put yourself in the shoes of the scientist, but simply to use your common sense. If there was one match in such a small sample, isn't it reasonable to believe that if they had 10,000 samples there would be more than one match? If they had 20,000 samples, there would be more than two, more than three? Can't say for sure. But isn't it reasonable? And doesn't that all come back to the concept of reasonable doubt? Because if there are three or four or five or six or ten different matches, is it reasonable to assume? Yeah, but it's still got to be him. It's not." T. at 470-472.
 {¶ 37} Upon review, we find the extensive cross-examination of the experts and the Y-STR testing to be sufficient, and well with the limits of trial strategy of the case.
 {¶ 38} Assignment of Error V is denied. *Page 10 
 {¶ 39} The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.
 By Farmer, J. Gwin, P.J. and Wise, J. concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio is affirmed. *Page 1